**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | No. 05 CR 691 |
| v. | ) | |
| | ) | |
| ANTOIN REZKO | ) | |

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Antoin Rezko has moved to dismiss or strike portions of the Indictment. For the reasons discussed below, Defendant's Motion to Dismiss or Strike Portions of the Fraud Allegations is granted in part and denied in part, and Defendant's Motion to Dismiss Count 17 and Allegations Related Thereto is denied.

### BACKGROUND

**I.   The Indictment**

On October 5, 2006, a federal grand jury returned a superseding indictment ("the Indictment") charging Defendants Antoin Rezko and Stuart Levine[1] with mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1346, and 2; attempted extortion, in violation of 18 U.S.C. §§ 1951 and 2; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(B)(I) and 2. (R. 96-1, Sup. Indict.) The Indictment also charges Defendant Rezko with aiding and abetting Defendant Levine in the solicitation of funds from various individuals and investment firms, in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2. (*Id.*)

---

[1] Stuart Levine pled guilty to Counts One and Twenty-Three on October 27, 2006. (R. 119-1.)

### A. TRS Board

The Indictment alleges that the Teachers' Retirement System ("TRS") was a public pension plan created by Illinois law for the purpose of providing pension, survivor, and disability benefits for teachers and administrators employed in Illinois public schools, excluding the City of Chicago. (*Id.* ¶ 1(a).) TRS served approximately 325,000 members and annuitants, and had assets in excess of approximately $30 billion. (*Id.*) TRS was funded by annual contributions from teachers, their employers, and the State of Illinois, as well as investment income. (*Id.*) In addition, TRS received federal funds in excess of $10,000 during each calendar year from 2001 through 2004. (*Id.* ¶ 1(d).)

The Indictment further alleges that an eleven member Board of Trustees directed the activities of TRS. (*Id.* ¶ 1(b).) The Board, among other responsibilities, reviewed and voted to approve or reject proposals by private investment management companies to manage funds on behalf of TRS. (*Id.*) TRS compensated these companies for their activities, typically through fees calculated as a percentage of the TRS assets they managed. (*Id.*)

Defendant Levine was a member of the TRS Board of Trustees. (*Id.* ¶ 1(j).) In that role, the Indictment alleges that he owed a fiduciary duty and a duty of honest services to TRS and its beneficiaries. (*Id.* ¶ 1(c).) The Indictment refers to the criminal laws of the State of Illinois relating to bribery (720 ILCS 5/33-1(d)) and official misconduct (720 ILCS 5/33-3), and to the State Officials and Employees Ethics Act (5 ILCS 430/5-50) to define the scope of Levine's fiduciary duties. (*Id.* ¶¶ 1(q), (r), (s).)

The Indictment alleges that Antoin Rezko – a businessman who owned and operated fast food restaurants and a real estate firm – participated in a scheme to defraud the TRS beneficiaries of Mr. Levine's honest services. (*Id.* ¶¶ 1(i), 2.) As part of the alleged scheme, Rezko and others

fraudulently used and sought to use Levine's position and influence as a member of the TRS Board of Trustees to obtain financial benefits for Rezko, Levine and their nominees and associates. (*Id.* ¶ 3.) Rezko allegedly used his relationship with certain Illinois State officials to ensure that Levine and other allies were in positions of influence on the TRS board. (*Id.* ¶ 3(a), 4, 4(a)-(c).) During the scheme, Rezko allegedly solicited, demanded, and received hundreds of thousands of dollars in undisclosed kickbacks and payments from seven investment firms (identified in the Indictment as, for example, "Investment Firm 1") seeking to do business with TRS. (*Id.* ¶¶ 3, 3(a)-(c), 5, 6, 6(a)-(t), 7, 7(a)-(l), 8, 8(a)-(h), 9, 9(a)-(f), 10, 10(a)-(h).)

As further part of the alleged scheme, Rezko attempted to establish a company to serve as an asset manager for TRS in order for Levine, Rezko, and their nominees to participate and financially benefit in the asset management operation without disclosing their positions to TRS. (*Id.* ¶¶ 3(c), 11, 11(a)-(d).)

### B. The Planning Board

The Indictment further alleges that Levine and Rezko took steps to use their influence and Levine's position on another board, the Illinois Health Facilities Planning Board ("Planning Board"), in a scheme to receive kickbacks in exchange for the Planning Board's approval of an application to build a new hospital. (*Id.* ¶¶ 1(e), 1(j), 12, 12(a)-(e).) The Indictment refers to the Planning Board's Ethical Guidelines to define the scope of Levine's fiduciary duties. (*Id.* ¶ 1(t).)

## II. The Honest Services Statute, 18 U.S.C. § 1346

The mail fraud and wire fraud statutes prohibit devising a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and executing that scheme by use of the mails, 18 U.S.C. § 1341, or by use of wire, radio,

3

or television communication in interstate commerce. 18 U.S.C. § 1346. "Until 1987, federal courts read both statutes to criminalize not only schemes for obtaining money or property, but also schemes to deprive another of 'the intangible right of honest services'"– a "doctrine [] applicable to [various] categories of defendants, [including] . . . private actors who abuse fiduciary duties by, for example, taking bribes." *United States v. Rybicki*, 354 F.3d 124, 133 (2d Cir. 2003). In 1987, the Supreme Court, in *McNally v. United States*, 483 U.S. 350 (1987), held that, contrary to the courts' common reading, the language of the mail fraud statute, 18 U.S.C. § 1341, "clearly protects property rights," *id.* at 356, but does not criminalize schemes "designed to deprive individuals, the people, or the government of intangible rights, such as the right to have public officials perform their duties honestly." *Id*. at 358. "Under *McNally*, all schemes or artifices to defraud relating to intangible rights to . . . honest services . . . [were] therefore beyond the mail-fraud proscriptions." *Rybicki*, 354 F.3d at 134. "By necessary implication, the wire-fraud proscriptions were similarly limited." *Id*.

In the following year, Congress enacted 18 U.S.C. § 1346 specifically to supersede *McNally*, and to define "scheme or artifice to defraud" to include a scheme or artifice to deprive another of the intangible right of honest services. *See United States v. Segal*, 495 F.3d 826, 834 (7th Cir. 2007); *accord United States v. Bloom*, 149 F.3d 649, 655 (7th Cir. 1998) ("In *McNally* the Supreme Court described the intangible rights theory this way: 'a public official owes a fiduciary duty to the public, and misuse of his office for private gain is a fraud.').

Breaching a fiduciary duty may constitute a deprivation of honest services under § 1346. *See Segal*, 495 F.3d at 834; *United States v. Thompson,* 484 F.3d 877, 882 (7th Cir. 2007)*; Bloom,* 149 F.3d at 654-57 (citing cases); *see also Rybicki*, 354 F.3d at 138 n.13; *United States v. Black*, 469 F. Supp. 2d 513, 532 (N.D. Ill. 2006). Yet "[n]ot every breach of every fiduciary duty works a

4

criminal fraud." *Bloom*, 149 F.3d at 654 (quoting *United States v. George*, 477 F.2d 508, 512 (7th Cir. 1973)); *see also Segal*, 495 F.3d at 834 ("*Bloom* remains the law in this circuit."). Rather, "[m]isuse of office (more broadly, misuse of position) for private gain is the line that separates run of the mill violations of state-law fiduciary duty . . . from federal crime." *Bloom*, 149 F.3d at 655; *see also United States v. Hausmann*, 345 F.3d 952, 956 (7th Cir. 2003).

### III. Defendant Rezko's Motions

Defendant Rezko challenges the Indictment on four grounds. First, he argues that the Court should strike certain words from Count One of the Indictment. Second, Rezko urges the Court to dismiss or strike counts in the Indictment related to Investment Firm One (Counts 1, 2, 17, 23 and 24) because the Government's allegations do not support those counts. Third, Rezko argues that Counts One through Fifteen should be dismissed in their entirety because 18 U.S.C. § 1346 is unconstitutionally vague. Finally, Rezko requests that the Court strike references to Illinois ethical guidelines and criminal statutes in Count One of the Indictment because they are unnecessary and prejudicial.

## ANALYSIS

### I. Motion to Strike the Words "money, property, and" From Count One

Defendant Rezko has moved the Court to strike three words from the second paragraph of Count One of the Indictment.[2] (R. 96-1, Sup. Indict., at page 8.) The Government agrees to this modification, and therefore the Court grants Rezko's motion to strike the phrase "money, property, and" from the second paragraph of Count One. *See* Fed. R. Crim. P. 7(d); *United States v. Marshall*,

---

[2]The paragraph reads in relevant part: "...devised and intended to devise, and participate in, a scheme and artifice to defraud the beneficiaries of TRS and the people of the State of Illinois, of ***money, property, and*** the intangible right to LEVINE's honest services..."

5

985 F.2d 901 (7th Cir. 1993).

## II. Motion to Dismiss Counts Related to Investment Firm One

### A. Legal Standard for Motions to Dismiss an Indictment

Fed. R. Crim. P. 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). When considering a motion to dismiss under Rule 12(b)(2), a court assumes all facts in the indictment are true and must "view all facts in the light most favorable to the government." *See United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). When viewed in that light, an indictment is sufficient if it satisfies three, constitutionally-mandated, requirements. *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). First, the indictment "must adequately state all of the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, the indictment must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." *Id.* (citing *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). In this regard, indictments "need not exhaustively recount the facts surrounding the crime's commission," *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997), rather "when determining the sufficiency of an indictment, [a court] look[s] at the contents of the subject indictment 'on a practical basis and in [its] entirety, rather than in a hypertechnical manner.'" *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002) (quoting *Smith*, 230 F.3d at 305). In addition, "[a]n indictment, or a portion thereof, may be dismissed if it is otherwise defective or subject to a defense that may be decided solely on issues of law." *United*

*States v. Black,* 469 F. Supp. 2d 513, 518 (N.D. Ill. 2006); *United States v. Labs of Virginia, Inc.*, 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003).

### B. Factual Sufficiency of the Indictment

#### 1. Counts One and Two

Rezko argues that the Indictment fails to allege one of the elements of the mail and wire fraud offenses charged in Counts One and Two. An indictment for mail or wire fraud is sufficient if it includes allegations that the defendant (1) participated in a scheme to defraud; (2) acted with intent to defraud; and (3) used the mail or wires in furtherance of the fraudulent scheme. *Hausmann*, 345 F.3d at 956; *United States. v. Vincent*, 416 F.3d 593, 600 (7th Cir. 2003). An honest services charge under § 1346 also requires that a defendant misused his office or position in furtherance of the scheme. *See Bloom*, 149 F.3d at 655.

##### (a) Misuse of Office

Rezko argues that the Indictment fails to allege that Levine used his office in connection with the transactions in Counts One and Two related to Investment Firm One.[3] The Indictment, however, alleges just that:

> "It was further part of the scheme that Rezko and Levine agreed that they would use their influence **and Levine's position on the TRS Board** to assist Individual C in obtaining TRS funds **for Investment Firms 1**, 2, and 3..." (R. 96-1, Sup. Indict., ¶ 6) (emphasis added).

Similarly, Rezko argues that the Indictment fails to support the charge that Levine ***misused*** his office in connection with the transactions related to Investment Firm One. Rezko's arguments border on the "hypertechnical" analysis that is not useful for evaluating an indictment. *See McLeczynsky*, 296 F.3d at 636; *Black*, 469 F. Supp. 2d at 518. Nonetheless, the Indictment does

---

[3]The Court notes that Counts One and Two properly allege the remaining elements of wire and mail fraud.

contain factual allegations which, when read in the light most favorable to the Government support the charge that Levine misused his office in connection with the Investment Firm One transactions. *See, e.g.,* R. 96-1, Sup. Indict., ¶¶ 3 ("[Levine and Rezko] fraudulently used and sought to use the position and influence of Levine and other members of the TRS Board..."), 14 ("Levine intentionally concealed from and failed to disclose to the TRS Board ... facts concerning the financial benefits that Rezko and Levine sought to obtain for themselves and their nominees..."). The Indictment also contains, at paragraphs 6(a) through (k), a series of very specific facts which, when read in the light most favorable to the Government, allege that Levine misused his position in relation to the Investment Firm One transactions. *See Agostino*, 132 F.3d at 1189.

Rezko relies heavily on a recent slip opinion, *United States v. Hurtgen*, No. 05 CR 408, 2007 WL 869558 (N.D. Ill., March 20, 2007), from a non-binding district court case. The *Hurtgen* case is factually distinguishable from the present case. In *Hurtgen*, the court dismissed the indictment against defendant Hurtgen because it failed to allege an offense. *See Hurtgen*, 2007 WL 869558, at *6-7. Specifically, the court found that the indictment failed to allege a violation of the mail and wire fraud statutes because it did not allege that the defendant had any knowledge of a kickback – a fundamental element of the scheme. The court found that deficiency fatal to the charge. Here, as discussed above, the Indictment alleges that Levine misused his office in furtherance of the alleged scheme. In contrast to *Hurtgen*, the Indictment sufficiently alleges an offense under the mail and wire fraud statutes.

        **(b)**      **Private Gain**

Rezko also reads *Bloom* to create an additional element for an honest services offense – that

the defendant ***personally gained*** from the transaction.[4]  Specifically, Rezko argues that because

"Levine is not alleged to have gained or stood to have gained, anything from [the Investment Firm

One] transaction" that the Indictment fails to support an honest services charge.  The test, however,

is not whether an individual *personally* gained, but rather whether a participant realized a *private*

gain.  *See United States v. Spano* 421 F.3d 599, 603 (7th Cir. 2005) (holding that "a participant in

a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other

participants.").  The Indictment alleges that Levine's associates – Rezko, "Individual C" and

"Individual D" – received portions of the "finders fee" associated with the Investment Firm One

transactions.  (R. 96-1, Sup. Indict., ¶¶ 6 (a)-(k).)  These allegations sufficiently allege "private

gain" under § 1346.

*United States v. Thompson* does not provide otherwise.  In *Thompson*, the Seventh Circuit

overturned a state employee's conviction under § 1346 where a jury had convicted the employee of

steering a contract to a particular bidder in exchange for a pay raise.  484 F.3d at 882-884.  The

employee was a state procurement officer who steered a contract to a low bidder who had made

political contributions to the governor, despite the fact that other bidders had been rated higher in

the contract selection process.  The government in *Thompson* asserted that the "private gain" was

a $1,000 annual salary increase and increased job security for Thompson by pleasing her supervisors

with the contract selection.  The Seventh Circuit overturned the conviction holding that the

employee received no "private gain" from the transaction, because "neither an increase in salary for

doing what one's superiors deem a good job nor an addition to one's peace of mind" is the type of

---

[4] Rezko confusingly seems to have abandoned this argument when he acknowledges that "the issue is not whether Levine received money or services but whether he misused his position to realize a gain ***of any type paid to anyone***."  (R. 210-1, Cons. Reply Memo in Sup. Of Def's Mots. To Dismiss or Strike, at page 7 n.4) (emphasis added)

9

"private gain" to which *Bloom* refers. *Id.* at 884. As the Seventh Circuit noted, "[i]t would stretch the ordinary understanding of language, however, to call a public employee's regular compensation, approved through above-board channels, a kind of 'private gain.'" *Id.* In determining that a pay raise is not a "private gain" under § 1346, *Thompson* discusses the "private gains" which are cognizable, including the types of "pay-offs outside proper channels" alleged in the Indictment. *Id.* ("The history of honest-services prosecutions is one in which the 'private gain' comes from third parties who suborn the employee with side payments, often derived via kickbacks skimmed from a public contract."); *see also Segal*, 495 F.3d 826 at 835.

Rezko also asks the Court to "carefully scrutinize" the allegations because they are "based almost exclusively on the fruits of Levine's cooperation." The law is clear, however, that the Court must view all allegations in the light most favorable to the Government and not make any credibility determinations at this stage. Given that Counts One and Two state the elements of the charged offenses, the Indictment is sufficient, and the Court denies Defendant's motion to dismiss these counts. *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003). The Court also denies Defendant's motion to dismiss Counts Twenty-Three and Twenty-Four which are based solely on the proceeds of the fraud alleged in Counts One and Two.

### 2. Count Seventeen

In a related motion, Defendant Rezko seeks dismissal of Count Seventeen, which alleges that he aided and abetted co-defendant Levine's violation of 18 U.S.C. § 666(a)(1)(B). Count Seventeen relates to the same Investment Firm One transactions discussed above. Rezko argues that the allegations in Count Seventeen are both insufficient and "belied" by the allegations in Count One. Both arguments fail. Count Seventeen satisfies the requirements of an indictment – it states the

elements of 18 U.S.C. § 666(a)(1)(B) and informs Rezko of the nature of the charges. *See Anderson*, 280 F.3d at 1124. Although Rezko argues that Count One somehow undermines Count Seventeen, he fails to cite even one example to support this argument. Viewed in the light most favorable to the Government, the allegations in Counts One and Seventeen are consistent, and therefore Rezko's motion to dismiss Count Seventeen is denied.

### III. Motion to Strike State Statutes and Guidelines From the Indictment

#### A. Legal Standard for Motions To Strike

Federal Rule of Criminal Procedure 7(d) governs motions to "strike surplusage from the indictment or information." The Advisory Committee Notes to subdivision (d) explain that the "rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Fed. R. Crim. P. 7(d), advisory committee's note. A district court may strike "immaterial, irrelevant, or prejudicial" language from an indictment, *Marshall*, 985 F.2d at 905, "only if the targeted allegations are clearly not relevant to the charge and are inflammatory and prejudicial." *See United States v. Levine*, No. 05 CR 691, 2005 WL 3597707, at *2 (N.D. Ill., Dec. 29, 2005); *United States v. Andrews*, 749 F.Supp. 1517, 1518 (N.D. III. 1990). "[L]egally relevant information is not surplusage and due to the exacting standard, motions to strike information as surplusage are rarely granted." *Black,* 469 F. Supp. 2d at 518 (quoting *United States v. Bucey*, 691 F. Supp. 1077, 1081 (N.D. Ill. 1988)).

#### B. Defendant Rezko's Argument

Rezko seeks to strike portions of the Indictment that discuss Illinois law. In particular, Rezko takes issue with references in Count One to two Illinois ethical guidelines and the Illinois criminal bribery and official misconduct statutes. The Government contends that the ethical

guidelines and criminal statutes are relevant because they help define the scope of Defendant Levine's duty of honest services under § 1346.

Many courts, including this one, have looked to state laws in defining the scope of duties under § 1346. *See United States v. Warner,* Nos. 06-3517, 06-3528, _ F.3d _, 2007 WL 2363220 at *27 (7th Cir. Aug. 21, 2007); *Hausmann*, 345 F.3d at 956; *Levine*, 2005 WL 3597707, at *3; *Black*, 469 F. Supp. 2d at 534 (citing cases). Rezko, however, relies on *United States v. Bloom* to argue that state laws are irrelevant to the scope of duties owed by a defendant under § 1346. Rezko's reliance on *Bloom*, however, is belied by a recent Seventh Circuit decision which clarified that "*Bloom* makes clear that state laws are useful for defining the scope of fiduciary duties" under § 1346. *Segal*, 495 F.3d at 834. Accordingly, state laws may be "legally relevant" to determining a defendant's § 1346 duties.

The Court already determined that the two criminal statutes and the Ethics Act referenced in the Indictment are relevant to defining Defendant Levine's duties under § 1346. *Levine*, 2005 WL 3597707, at *3. Defendant Rezko does not provide any basis for the Court to revisit this ruling. Similarly, those laws are relevant to determining whether Rezko aided Levine in breaching those duties. Further, the Planning Board's Ethical Guidelines are also relevant to determining whether Rezko aided Levine in breaching his duties owed to that Board.

Finally, the state law references in the Indictment will not prejudice Rezko. The Court can address any potential prejudice or jury confusion arising from the inclusion of these state laws in the Indictment in its instructions to the jury. *See Segal*, 495 F.3d at 835 (upholding district court's use of jury instructions explaining that state laws were to be used for "determining the existence, the scope and the nature of defendants' legal and fiduciary duties in this case").

Rezko's reliance on two decisions from other circuits to support striking the state law references from the Indictment fails. Rezko first cites *United States v. Sawyer,* 85 F.3d 713 (1st Cir. 1996) for the proposition that a jury may be prejudiced by the Government's references to state laws. In *Sawyer,* the Fifth Circuit reversed a defendant's conviction under § 1346 because the trial court improperly instructed the jury that a violation of the state law was an *ipso facto* violation of § 1346. *Sawyer*, 85 F.3d at 728. Far from holding that reference to state law was improper, the Fifth Circuit in *Sawyer* noted that the prejudice from the faulty jury instruction could have been avoided with a proper instruction. *Id.* at 729.

Rezko also relies on a Fifth Circuit decision, *United States v. Brumley,* 116 F.3d 728 (5th Cir. 1997). That decision, however, expressly approves the lower court's reliance on Texas law to shape the duties under § 1346. *See* 116 F.3d at 735.

## IV. Constitutionality of 18 U.S.C. § 1346

A party may raise a vagueness challenge by arguing either that a statute is vague as applied to the case, or that a statute is void on its face. Rezko challenges the constitutionality of the honest services prong of the mail and wire fraud statutes on both grounds. The Court has already rejected similar arguments when considering Defendant Levine's motion to dismiss the Original Indictment in this case. *See Levine*, No. 2005 WL 3597707, at *4.

Where a statute does not implicate First Amendment interests, as is the case here, a court generally "must uphold a facial challenge only if the enactment is impermissibly vague in all of its applications." *Fuller v. Decatur Public School Bd. of Educ. School Dist. 61*, 251 F.3d 662, 667 (7th Cir. 2001) (quotations omitted). Numerous courts, including this one, have found § 1346 constitutional on its face. *See Warner,* 2007 WL 2363220 at *26 (Section 1346 is not

13

unconstitutional on its face)*; Rybicki*, 354 F.3d at 143 (same); *United States v. Frost*, 125 F.3d 346, 371 (6th Cir.1997) (same); *Black*, 469 F. Supp. 2d at 531 n.10 (same); *Levine*, 2005 WL 3597707, at *4 (same). Rezko has failed to cite any authority holding that § 1346 is unconstitutionally vague on its face, and the Court declines to reverse its prior holding.

Rezko next argues that § 1346 is unconstitutional as applied, because it failed to put him on notice that his conduct could result in criminal liability. In *Hausmann*, the Seventh Circuit rejected an as applied vagueness challenge under § 1346, holding that "the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, and 1346, are not unconstitutionally vague as applied under the intangible-rights theory to a kickback scheme enabled by the offender's misuse of his fiduciary position..." 345 F.3d at 958; *see also Warner*, 2007 WL 2363220 at *26-27. In *Hausmann*, the Seventh Circuit held that its decision in *Bloom* placed the defendant "on notice that criminal liability under the mail and wire fraud statutes – particularly under an intangible-rights theory – attaches to the misuse of one's fiduciary position for personal gain." *Hausmann,* 345 F.3d at 957. Here, the Indictment charges Rezko with participating in Levine's abuses of his fiduciary positions through the use of kickbacks and bribery. Given *Bloom* and *Hausmann*, Rezko was on notice at least as early as 1998 that aiding and abetting a fiduciary to abuse his position for personal gain risks criminal liability. *Id*. at 957-58; *Levine*, 2005 WL 3597707, at *4. Accordingly, Rezko's as-applied challenge fails.

## CONCLUSION

For these reasons, the Court denies Defendant's motion to dismiss and denies in part and grants in part Defendant's motion to strike.

Dated: October 2, 2007

                                            ENTERED

                                            _____
                                            AMY J. ST. EVE
                                            United States District Court Judge